UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


L. RENEE MALLISON,

       Plaintiff,

                                                        No. 1:09-cv-1133

v.

                                                        HON. ROBERT HOLMES BELL

HAWARTH, INC.

       Defendant.
                                         /

## **O P I N I O N**

This is an employment case involving alleged salary discrimination based on sex. Plaintiff seeks relief under the Equal Pay Act ("EPA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"). This matter is before the Court on Defendant's motion for summary judgment on all of Plaintiff's claims.

### **I. Background**

Plaintiff began employment at Haworth's Luddington Components facility on January 23, 1995, as a Plant CRT Clerk (later renamed "Production Coordinator"), an entry-level clerical position. At that time, Plaintiff had a high school diploma and five years of clerical work experience. (Dkt. No. 27 at 3.) In July 1996, Plaintiff was promoted to Associate Material Planner Grade 6. (*Id.* at 4.) Plaintiff was responsible for reviewing supply orders, providing support to the manufacturing and distribution

1

departments, and coordinating engineering changes on manufactured products. (Dkt. No. 25 at 2). In September of 1997, Plaintiff was promoted again to Associate Material Planner Grade 12, with two Production Coordinators reporting to her. (Dkt. No. 27 at 4). Plaintiff maintains that her salary was below Haworth's minimum pay grade for an Associate Material Planner and that she earned significantly less than Dave Nickelson, a Material Planner, who had the same duties and responsibilities as she. (*Id*.)

Plaintiff voluntarily left her position as Associate Material Planner in December 1999 and began working part-time as an Office Coordinator in order to complete her college education and raise her children to school age. (*Id*. at 4-5.) In 2005, she returned to full-time work, still as an Office Coordinator.

In 2006, Plaintiff met with Plant Manager Brian DeKraker and told him she was interested in moving to a management role. (Dkt. No. 25 at 3.) In response, DeKraker created a number of opportunities for Plaintiff to advance her career and set herself up for a management position. Upon DeKraker's advice, Plaintiff sought and received promotion to a Coordinator II position in the engineering department in April of 2006. (Dkt. No. 27 at 5.) In her new position, Plaintiff carried over a number of responsibilities from her former role as an Office Coordinator. (*Id*. at 6.) Plaintiff also voluntarily took on a leadership role in implementing a "lean manufacturing initiative," and shadowed Dale Wright, a Production Supervisor II, for the purpose of familiarizing herself with the responsibilities of a management position. (Dkt. No. 25 at 5.)

2

Haworth recognizes three levels of production supervisors: 1B, 1A, and II. The positions carry similar responsibilities, but reflect differences in experience, skill and education, with 1B requiring the least skill and experience and II being the most advanced. (*Id*. at 6.) When Dale Wright announced his intention to retire, Haworth posted a job opening for Production Supervisor IB. In October 2007, Plaintiff bid for and received the position. (Dkt. No. 27 at 6.) Her starting salary as a Production Supervisor IB was $39,000, which was within the $37,284 - $55,952 salary rage established by Haworth for the position.

In February 2009, Plaintiff discovered that Mark Tomczak, a Production Supervisor II, was earning $51,610 a year, $12,610 more than Plaintiff. Plaintiff was distressed, and approached Plant Manager DeKracker regarding the disparity. DeKracker provided job and salary grade information to Plaintiff on request. (Dkt. No. 25 at 9.) Jamie Eckerman, the Operations Team Manager and Plaintiff's direct supervisor, then had a conversation with Plaintiff, explaining that managers hired from outside Haworth often have higher salaries. (Dkt. No. 27 at 8.) Plaintiff was dissatisfied with this response. Plaintiff also believed that her supervisor, Eckerman, was taking unaccounted for vacation. She complained via email to Plant Manager DeKracker regarding Eckerman's alleged abuse of vacation on April 20, 2009. (Dkt. No. 25 at 9-10.) Plaintiff left work later that day and did not return. (*Id.*)

On April 21, 2009, Plaintiff saw her longtime family physician, who took Plaintiff off work and prescribed medication for anxiety and depression. (Dkt. No. 27 at 9.) On June 15, 2009, Plaintiff filed a charge with the EEOC claiming

discrimination on the basis that a male supervisor was paid more for doing the same job. (Dkt. No. 25 at 10.) The EEOC did not make any findings, and issued a Right to Sue Letter on September 23, 2009. (*Id.*)

## II. Legal Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment, the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If Defendants carry their burden of showing there is an absence of evidence to support a claim, Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, the Court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587). Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

### III. Analysis

#### A. Statutes of Limitations

##### 1. ELCRA

Defendant raises statute of limitations arguments in an effort to limit each of Plaintiff's claims. Plaintiff and Defendant agree that the statute of limitations period under ELCRA is three years from the date a complaint is filed. M.C.L. § 600.5805(10). (Dkt. No. 25 at 12; Dkt. No. 27 at 14.) Plaintiffs complaint was filed on December 17, 2009. Therefore, the cut off for ELCRA claims is December 17, 2006. This period of activity for which Plaintiff can file a claim includes Plaintiff's work as both a Production Supervisor IB and Coordinator II.

##### 2. EPA

Plaintiff and Defendant disagree on the appropriate limitations period under the EPA. EPA claims must be filed within two years after a cause of action accrues or within three years if the alleged violation is "willful." 29 U.S.C. § 255(a) (2000). To establish that an alleged violation is willful, Plaintiff must show that Defendant knew or showed reckless disregard for whether its conduct was prohibited by statute. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988). Defendant argues that Plaintiff has produced no evidence of knowledge or reckless indifference by the Defendant.

Plaintiff argues that Defendant knowingly or recklessly violated the EPA by departing from its own policy of basing salary solely on the value of a job and not according to the qualifications of an employee. (Dkt. No. 27 at 12.) To establish that

Defendant Haworth has such a policy, Plaintiff cites an excerpt from Haworth's Salary Administration Guidelines: "[Haworth's] salary administration system is based on the worth of positions to the company - not on the individuals performing those positions." (*Id.* at 22.) According to Plaintiff, differences in salaries among "Production Supervisors" flies in the face of this policy, (*id.* at 12), and the policy itself demonstrates Haworth's knowledge that salary differences are violations of the EPA. (*Id.* at 22) ("Apparently, Haworth understands the Equal Pay Act very well. Much of the point of the Act was to eliminate the gender inequity in pay that is caused by the years of experience men generally have . . . [t]his is what Haworth's equal pay policy is all about.").

Whether the EPA actually requires blindness to factors such as work experience is discussed below. *See infra* Parts III.B and III.C. The Court finds that it does not. However, it is clear that Plaintiff cannot show "willful" violation of Defendant's own policy, let alone the EPA. When pointing to salary disparity between herself and other "Production Supervisors," Plaintiff conveniently ignores that there are in fact three levels of Production Supervisor, each differentiated by specific educational and work experience requirements. As Haworth includes work experience, education, and seniority into its position descriptions (which have associated salary ranges), it is clear that Haworth's policy is to factor employee qualifications into position title and earnings. Defendant's policy does not, as Plaintiff suggests, admit knowledge that the EPA forbids salary differentiation based on experience, nor does Defendant violate its own policy by paying employees with

6

different titles different wages within the salary ranges associated with the respective positions. As Plaintiff offers no alternative grounds for invoking the extended limitations period for willful violations, the general limitations period of two years will apply. Thus, Plaintiff's EPA claims before December 17, 2007 are time barred. This limits Plaintiff's EPA claim to her work as a Production Supervisor IB.

### 3. Title VII

The statute of limitations for Title VII requires that discrimination charges be filed within 180 days of the alleged unlawful employment practice, or within three hundred days if the Plaintiff initially instituted proceedings with an agency having authority to grant relief. 42 U.S.C. § 2000e-5(e)(1). As Plaintiff initially filed her claims with the EEOC, the 300 day window applies. Calculating from the filing of Plaintiff's complaint, the cutoff date is August 19, 2008. Plaintiff clearly filed within the appropriate period at least with respect to her position as Production Supervisor 1B. However, Defendant maintains that the statute of limitations precludes any Title VII claim for unequal pay arising from Plaintiff's employment as an Associate Material Planner (1996-1999) or a Coordinator II (2006-2007), both of which were terminated prior to the 300 day cutoff.

As Plaintiff notes, the recently enacted Lilly Ledbetter Fair Pay Act enables plaintiffs to recover "back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge." 42

U.S.C. § 2000e-5(e)(3)(B). This language pertains to damages, not claims. Whether or not a Plaintiff can reach beyond a timely claim of discrimination in her most recent position and collect damages arising from discrimination in previous positions with the same employer which would be time barred as independent claims but which are within two years of her complaint is an interesting question. However, the Court need not decide the question, as Plaintiff only held the Production Supervisor IB position during the two years prior to her complaint. Therefore, Defendant is correct in asserting that Title VII does not reach Plaintiff's work as a Material Planner and Coordinator II. Plaintiff Title VII claim is limited to her work as a Production Supervisor IB.

**B. Equal Protection Act**

The EPA "prohibits employers from paying an employee at a rate less than that paid to an employee of the opposite sex for performing equal work." *Beck-Wilson v. Principi*, 441 F.3d 353, 359 (6th Cir. 2006); 29 U.S.C. § 206(D)(1). "To establish a prima facie case of unequal pay for equal work a plaintiff has the burden to prove that the employer pays different wages to employees of the opposite sexes for equal work on jobs the performance of which require equal skill, effort and responsibility, and which are performed under similar working conditions." *Corning Glass Works v. Brennan*, 417 U.S. 188 (1974); *Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir. 1981) (internal citations omitted). To determine if work is substantially equal, the Court must make an "overall comparison of the work, not its individual segments." *Id.* at 826. There must be "substantial equality of skill, effort, responsibility and

working conditions." *Conti v. Universal Enters., Inc.*, 50 F. App'x 690, 696 (6th Cir. 2002). A plaintiff cannot meet this burden if the alleged comparable had "entirely different duties and responsibilities." *Id.* at 698. Analysis must focus on actual job requirements and duties and not job classifications or titles. *Beck-Wilson,* 441 F.3d at 362. "Because the comparison at the prima facie stage is of the jobs and not the employees, 'only the skills and qualifications actually needed to perform the jobs are considered.'" *Id.* (quoting *Miranda v. B & B Cash Grocery Store, Inc*., 975 F.2d 1518, 1533 (11th Cir. 1992)).

There is no dispute that Plaintiff earned less than Mark Tomczak and Dale Wright, the male production supervisors to whom Plaintiff compares herself. Nevertheless, Defendant argues that Plaintiff fails to meet her initial burden in establishing a *prima facie* case. Defendant maintains that the production supervisor positions were not substantially similar; Plaintiff and her counterparts were responsible for different departments which vary in complexity and technical demands. (Dkt. No. 25 at 21.) Plaintiff retorts that the duties of all production supervisors are essentially identical, and that she shared responsibility for supervising the allegedly more demanding departments. (Dkt. No 27 at 18-20.) The Court finds that there remains a genuine issue of material fact regarding the substantial similarity of the Production Supervisor positions in question. Although not dispositive, the nearly identical position descriptions for the three levels of Production Supervisor, taken with Plaintiff's testimony regarding her duties relative to her counterparts, is enough to preclude summary judgment on Plaintiff's *prima facie* case under the EPA.

9

However, Defendant also raises an affirmative defense. The EPA recognizes four ways in which an employer can establish an affirmative defense to a claim of pay discrimination; namely, by showing that its compensation decision was based on: (1) seniority; (2) merit; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex. *Buntin v. Breathitt Cnty. Bd. of Educ.*, 134 F.3d 796, 799 (6th Cir. 1998). Defendant asserts that its compensation decisions are not based on gender, but rather on the members' relevant work experience, educational/professional background, and competencies in the job. (Dkt. No. 22.) These are legitimate "factor[s] other than sex," sufficient to establish an affirmative defense under the EPA. *Balmer v. HCA, Inc.,* 423 F.3d 606, 612 (6th Cir. 2005); s*ee also Pouncy v. Prudential Ins.*, 668 F.2d 795, 803 (5th Cir. 1982) ("different job levels, different skill levels, previous training, and experience all may account for unequal salaries in an environment free of discrimination.").

There is no material issue of fact regarding the gap in work experience between Plaintiff and either Mark Tomczak or Dale Wright, the men with whom Plaintiff compares herself. Plaintiff acknowledges that she had no supervisory or manufacturing experience prior to her employment at Haworth. (Dkt. No. 27 at 3.) Plaintiff's work experience at Haworth is clear. While she filled a variety of roles peripheral to manufacturing at Haworth's Luddington plant over her career as a CRT Clerk, Associate Material Planner, Officer Coordinator, and Coordinator II in the engineering department, Plaintiff had no direct experience working in a manufacturing/production department prior to her promotion to Production Supervisor

IB. (*Id.* at 23-24; Dkt. No 34 at 5.) Furthermore, Plaintiff's only supervisory experience prior to obtaining the Production Supervisor IB position was as an Associate Material Planner at Haworth, when she supervised two clerical employees. (Dkt. No. 27 at 23; Dkt. No. 34 at 4-5.) Plaintiff also suggests that she had some supervisory role as a Coordinator II based on one comment in a performance review commending "behaviors expected of those who supervise others," (Dkt. No. 27 at 23), but Plaintiff fails to describe any supervisory duties or identify any employees reporting to her while she held that position. In contrast, Tomczak had managed an entire manufacturing plant for four years before he applied to Haworth. (Dkt. No. 34 at 5.) He was hired as a Production Supervisor IA despite meeting the requirements for the Production Supervisor II position. Only after three years of work at the 1A level was he promoted to the Supervisor II position.

The experience gap between Plaintiff and Dale Wright (who held the position of Production Manager II when he retired from Haworth in 2007) is even more pronounced. Wright had accumulated almost 20 years of manufacturing supervisory experience before he was hired as a Production Supervisor II at Haworth in 1997. (Dkt. No. 34 at 6.) From 1978 to 1984, Wright was a Production Supervisor at Acemco, Inc., where he supervised 50 skilled hourly workers. From 1984 until 1993, Wright was employed at Benteler Industries. (*Id.*) For the first four of these years, Wright was a Production Supervisor managing 50 hourly employees. For the next five years, Wright was a Manufacturing Superintendent, and was responsible for training and supervising eight production supervisors. (*Id.*) From 1993 to 1996,

11

Wright was the Plant Manager for Spartan Engineered Products, which employed approximately 225 people. (*Id.*) From April 1996 until he was hired by Haworth, Wright was the General Manager for Bayport Manufacturing Company, where he directly supervised 10 employees. (*Id.*) This 20 years of experience clearly exceeded the minimum twelve years of related supervisory experience required to qualify Wright as a Production Supervisor II when he was hired. By 2007, when Defendant hired Plaintiff as a Production Supervisor 1B and Wright had reached a salary of $68,484, Wright had worked more than 7 years in the Production Supervisor II and Operations Team Manager roles at Haworth, for a combined total manufacturing supervisory experience of more than 27 years. Plaintiff does not contest these facts regarding the qualifications, experience and seniority of Dale Wright and Mark Tomczak. Even drawing all reasonable inferences in favor of Plaintiff regarding her supervisory and manufacturing experience, it is clear that Plaintiff had much less relevant experience than the men she compares herself with.[1]

Indeed, Plaintiff's primary argument appears to be that, under both the EPA and Haworth's own policy, differences in experience are not in fact a valid basis for wage differentiation. (Dkt, No. 27 at 22-23). As previously explained, the Court

---

[1] In Defendant's brief in support of its motion for summary judgment, Defendant also juxtaposes the work experience of Plaintiff and Michael Keating, who held the position of Maintenance Supervisor. (Dkt. No. 25 at 16-18.) Apparently, comparisons to Keating were the subject of discovery and deposition inquiry. However, as Plaintiff does not identify Michael Keating in her complaint, nor mention Keating in her response in opposition to summary judgment or in any material before this Court, the Court considers comparisons to Keating immaterial with respect to Defendant's motion for summary judgment.

cannot agree with Plaintiff's interpretation of Haworth's wage determination policy. *See supra* Part III.A.2. Furthermore, it is not the case that the EPA prohibits wage differentiation based on experience. Differences in work experience are a valid affirmative defense to an EPA wage discrimination claim. *See Balmer,* 423 F.3d at 612 (6th Cir. 2005) (wage differential based on education or experience is based on a "factor other than sex."); *Ambrose v. Summit Polymers, Inc.*, 172 F. App'x 103, 107 (6th Cir. 2006) ("Experience is a factor other than sex for purposes of the Equal Pay Act."); *Pouncy*, 668 F.2d at 803 (5th Cir. 1982) ("[D]ifferent job levels, different skill levels, previous training, and experience all may account for unequal salaries in an environment free of discrimination."); *Andrews v. Moore Elec. Serv., Inc*., 2005 WL 3609371, at *2. (W.D. Mich. Nov. 2, 2005) ("[P]ay differential is justified by factors other than sex, such as seniority, merit, experience or education) (quoting *Howard v. Lear Corp*., 234 F.3d 1002, 1004 (7th Cir. 2000)). Because there is no genuine issue of material fact pertaining to Defendant's affirmative Defense, and Defendant is entitled to judgment as a matter of law, summary judgment will be entered in favor of the Defendant on Count I of Plaintiff's complaint.

## C. Title VII and the Elliott-Larsen Civil Rights Act

The analysis for wage discrimination under Title VII and ELCRA are fundamentally the same. *See Radtke v. Everett*, 442 Mich. 368, 382 (1993) (noting that Michigan courts frequently "turn to federal precedent for guidance in reaching [their] decision" of whether a claim for discrimination has been established). To establish her *prima facie* case under both Title VII and ELCRA, Plaintiff must

demonstrate that she was similarly situated to male members but treated differently with regard to salary. *Knox v. Neaton Auto Products Mfg., Inc.*, 375 F.3d 451, 456-57 (6th Cir. 2004); *Hazle v. Ford Motor Co.,* 464 Mich. 456, 463 (2001).

To be "similarly situated," Plaintiff must show that the "comparables are similarly situated in all respects." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (emphasis in original.) Thus, Plaintiff must prove that "all of the relevant aspects of [her] employment situation were nearly identical to those of [another's] employment situation," including such things as work experience, job duties, and quality of work performance. *Town v. Michigan Bell Telephone Co.*, 455 Mich. 688, 699-700 (1997). *See also Ledbetter v. Gilley,* 385 F.3d 683, 691 (6th Cir. 2004) ("Differences in job title, responsibilities, experience, and work record can be used to determine whether two employees are similarly situated."); *Terwilliger v. GMRI, Inc.,* 952 F. Supp. 1224, 1229 (E.D. Mich. 1997) (holding that plaintiff failed to establish a prima facie case under ELCRA because the male employees had greater job responsibilities and more relevant prior experience).

Like the EPA, Title VII and ELCRA sanction work experience as a valid basis for wage differentiation. They require Plaintiff to show that work experience was not a basis for wage disparity in her *prima facie* case rather than placing the burden on Defendant to raise differences in work experience as an affirmative defense. Plaintiff offers no arguments particular to her Title VII or ELCRA claims. Indeed, Plaintiff relies on the same arguments advanced in support of her EPA claim. (Dkt. No. 27 at 15-16.) Therefore, for the same reasons that Plaintiff failed to refute Defendant's

affirmative defense to her EPA claim, Plaintiff also fails in her *prima facie* case of wage discrimination under Title VII and ELCRA with respect to her employment as a Production Supervisor IB.  Plaintiff cannot show that differences in pay between herself, Tomczak, and Wright were not based on major differences in supervisory manufacturing experience and seniority.

The Title VII statute of limitations restricts Plaintiff's claim to her work as a Production Supervisor IB.  *See supra* Part III.A.3.  Thus, the preceding analysis shows that Defendant is entitled to summary judgment on the Title VII claim.  Summary judgment will also be granted on Plaintiff's ELCRA claim with respect to her work as Production Supervisor IB.  ELCRA, however, features a longer limitations period, and Plaintiff also alleges wage discrimination pertaining to her work as a Coordinator II in the engineering department.  Plaintiff claims that Mike Woods, an Engineering Technician II, was similarly situated to Plaintiff, performed virtually identical work, and yet received significantly higher pay.  (Dkt. No. 27 at 27 at 15.)  Defendant argues that the Engineering Technician II position is substantially different and more technical in nature than the Coordinator II position.  (Dkt. No. 25 at 18.)  However, Plaintiff forcefully maintains in her deposition that she and Mike Woods were both non-engineers with virtually identical duties, some of them technical.  (Dkt. No. 27 at 15; Pl. Dep. at 117-119.)  Furthermore, the large experience gap separating Plaintiff from Mark Tomczak and Dale Wright is absent here.  Unlike Plaintiff, Michael Woods did not have a college degree, and his work experience does not appear overwhelming in comparison to Plaintiff's.  Drawing all reasonable inferences in

favor of Plaintiff, whether or not Plaintiff and Woods were similarly situated remains a genuine issue of material fact. Therefore, summary judgment will be denied with respect to Plaintiff's ELCRA claim for damages arising out of her work as a Coordinator II.

**IV. Conclusion**

For the reasons stated herein, the Court will grant Defendant's motion for summary judgment on Counts I (EPA) and II (Title VII) of Plaintiff's complaint. Summary judgment will also be granted on Count III (ELCRA) with respect to Plaintiff's employment as a Production Supervisor IB. Still remaining will be Plaintiff's Count III claim of wage discrimination arising from her work as a Coordinator II. An order consistent with this opinion will be entered.


Date: January 14, 2011           /s/ Robert Holmes Bell
                                 ROBERT HOLMES BELL
                                 UNITED STATES DISTRICT JUDGE